CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
for Danville
SEP 03 2008
JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| PAMELA H. BOWEN, Plaintiff, | ) | CASE NO. 4:07CV00041 |
| v. | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | ) | By: B. Waugh Crigler<br>U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's July 28, 2005 application for a period of disability and disability insurance benefits[1] under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423 is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff had not engaged in substantial

---

[1]Plaintiff's brief provides that she applied for supplemental security income. (Pl's Brief, p. 1.) The record reflects only that she applied for a period of disability and disability insurance benefits. (R. 14.)

gainful activity during the period between her alleged disability onset date, October 6, 1996, and her date last insured, December 31, 2002. (R. 16.) The Law Judge further found that through her date last insured, plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, depression, and anxiety. (R. 16.) The Law Judge determined that through her date last insured, plaintiff's impairments, viewed individually or in combination, were not severe enough to meet or equal any listed impairment.[2] (R. 16.) The Law Judge was of the view that although her medically determinable impairments could have reasonably been expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. 19.) The Law Judge opined that plaintiff retained the residual functional capacity ("RFC") to perform a range of light exertional work which included the ability to push/pull in all extremities, at least much as she could lift/carry, and she was occasionally able to perform all postural activities. (R. 18.) The Law Judge also found that she could follow simple and complex instructions, but that due to emotional impairments, she had some mild difficulty relating to co-workers and the public, as well as some problems with consistent attendance. (R. 18.) The Law Judge concluded that this RFC did not preclude plaintiff from performing her past relevant work as an audit clerk. (R. 22.) Thus, the Law Judge ultimately found she was not disabled under the Act at any time between October 6, 1996, her alleged disability onset date, through December 31, 2002, her date last insured. (R. 22.)

Plaintiff appealed the Law Judge's December 29, 2006 decision to the Appeals Council.

---

[2]The Law Judge noted that plaintiff's obesity did not increase the severity of her other impairments to the extent that the combination of impairments met a listing. (R. 17.)

(R. 6-8.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan,* 907 F.2d 1453 (4th Cir.1990); *Shively v. Heckler,* 739 F.2d 987 (4th Cir. 1984). The Regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. §§ 404.1527 and 416.927; *Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966).

This is not plaintiff's first application for a period of disability and disability insurance benefits. She previously filed an application on November 1, 2001, in which she also alleged a disability onset date of October 6, 1996. (R. 14.) On March 30, 2002, her claim was initially denied, and it was again denied upon reconsideration on July 11, 2002. (R. 14.) Plaintiff did not pursue further administrative consideration of that claim. (R. 14.) Accordingly, the administrative decision became *res judicata*, barring further consideration of the evidence in that claim absent an actual or constructive reopening. *See Califano v. Sanders*, 430 U.S. 99 (1977); *McGowen v. Harris*, 666 F.2d 60 (4th Cir. 1981); *Cleaton v. Secretary*, 815 F.2d 295 (4th Cir. 1987).

The Commissioner takes the position that the court's consideration should be limited to

the period between July 11, 2002, the date of the prior administrative decision, and December 31, 2002, the date plaintiff's insured status expired. (Comm's Brief, pp. 3-4.) This is so because the Commissioner believes that, under *McGowen v. Harris*, the doctrine of *res judicata* applies to any period preceding July 11, 2002, and that evidence submitted after the expiration of plaintiff's insured status is neither relevant nor material to the outcome of the case. (Comm's Brief, p. 3.) In short, the Commissioner believes that plaintiff must establish disability on the basis of the evidence covering the relevant five-month time period, and that she has not done so. (Comm's Brief, p. 4.)

*Res judicata* does bar consideration of evidence prior to July 11, 2002, provided the claim had not been reopened, either actually or constructively. *See McGowen*, 666 F.2d at 65-66. Here, the Law Judge stated, "After careful consideration of *all the evidence*, the undersigned Administrative Law Judge concludes the claimant was not under a disability . . . *from October 6, 1996 through the date last insured*." (R. 14)(emphasis added.) Thereafter, he proceeded to weigh all the evidence in the record, even that produced in the prior claim. While the plaintiff's claim did not expressly seek to reopen the case, the undersigned cannot help but conclude, on this record, that the Law Judge either actually or constructively reopened the claim under the principles set forth in *McGowen*. Thus, the undersigned cannot accept the Commissioner's assertion that *res judicata* bars consideration of the evidence predating July 11, 2002, because, once the claim was reopened by the Law Judge, this evidence became and remains relevant and material to the case.

By the same token, evidence developed and submitted post-dating the expiration of her insured status ordinarily would not be relevant to a determination of disability during the period

plaintiff was insured. The exception to this rule, of course, is where the evidence can be shown to relate back to the period under consideration.

In a brief filed in support of her motion for summary judgment, plaintiff argues that the Law Judge's RFC finding that she would have only "some problems with consistent attendance" is not supported by substantial evidence. (Pl's Brief, pp. 23-28.) Specifically, plaintiff believes it is undisputed that she had an excessive number of absences when employed, and that she remains incapable of maintaining consistent attendance at work. (Pl's Brief, pp. 23-26.) Moreover, plaintiff argues that the vocational expert's testimony reveals that an inability to maintain regular attendance would preclude her from performing not only her past relevant work, but all substantial gainful activity. (Pl's Brief, pp. 26-28.)

Plaintiff has offered that her hearing testimony supports her claim that she missed an excessive number of days when she was employed as an audit clerk at O'Sullivan Industries, Inc. (Pl's Brief, p. 24.) In context, however, her testimony reveals her acknowledgment and agreement with counsel's representation that those absences were "nothing abnormal," and did not exceed one day per month. (R. 406.)

Next, plaintiff refers to a letter from Steven B. Mand, Human Resources Manager at O'Sullivan. (Pl's Brief, p. 24.) Mand's letter, dated September 6, 2006, reveals that plaintiff worked at O'Sullivan from January 1989 until October 1996. (R. 170.) He noted that, although plaintiff had been a reliable employee, she was absent so many days in September and October 2006 that she was subject to the company's attendance program penalty phase. (R. 170.) Mand further noted that this conduct was "completely counter to her previous performance," and that when she was told by her doctors that "she was not capable of performing her job," she "resigned

in late October." (R. 170.)

In support of her argument that she will have difficulty maintaining regular attendance, plaintiff initially points to a letter from her psychiatrist, Richard Oliver, M.D. (Pl's Brief, pp. 24-25.) In an August 31, 2006 letter to plaintiff's counsel, Dr. Oliver opined that plaintiff "would most likely miss three or more days from work[3] because of her medical condition." (R. 376.) Notably, Dr. Oliver had seen plaintiff only three times before writing this letter, all in late 2005, and there is no indication within the four corners of the letter that the limitations he found to exist in 2006 related back to 2002. (R. 376.) Thus, plaintiff has failed to demonstrate the relevance of Dr. Oliver's evidence to the applicable period under consideration.

Next, plaintiff refers to a functional capacity Questionnaire completed by a nurse practitioner, Sally Joseph. (Pl's Brief, p. 25.) On August 8, 2006, Joseph opined that plaintiff's impairments would likely produce "good days" and "bad days."[4] (R. 374.) However, Joseph's Questionnaire was completed more than three and a half years after the relevant period. Moreover, the Questionnaire reveals that, although the claimant reported a ten-year history of anxiety, depression, fatigue and fibromyalgia, Joseph had seen plaintiff only four times prior to the August 8, 2006 evaluation.[5] (R. 370, 374.)

---

[3]It is not clear from the context of this statement whether Dr. Oliver was opining that plaintiff would miss three or more days from work each week, or three days per month, but presumably he was referring to a month. (R. 376.)

[4]When asked on an average how many days a month plaintiff could be expected to miss work, Joseph responded with "cannot say." (R. 374.)

[5]It is noteworthy that, in answering whether her patient was a malingerer, Joseph responded with a question mark. (R. 371.) In addition, Joseph responded to a significant number of questions with responses such as "unknown," "do not know," "cannot answer," and "cannot say." (R. 370-374.)

Plaintiff also refers to an assessment provided by Dana R. Blackmer, Ph.D., a licensed clinical psychologist with the Virginia Department of Rehabilitative Services. (Pl's Brief, p. 25.) Dr. Blackmer evaluated plaintiff on January 16, 2002, and at that time, she opined that plaintiff's attendance at work might be "somewhat inconsistent" over time. (R. 224.) Nothing more specific than this has been offered by Dr. Blackmer.

Finally, plaintiff refers to evaluations by State Agency record reviewing psychological experts, Donald Bruce, Ph.D. and E. Entin, Ph.D. (Pl's Brief, pp. 25-26.) Drs. Bruce and Entin both found that plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was only "moderately limited." (R. 241, 326.) While Dr. Bruce's evaluation occurred on March 20, 2002, within the relevant period, he found she had only "moderate" attendance limitations. (R. 241.) Dr. Entin's evaluation was completed on October 17, 2005, almost three years after the relevant period. (R. 326.)[6]

The undersigned finds that, although plaintiff presented some evidence of limitations on her capacity to maintain regular attendance during the relevant time period, the Law Judge's RFC finding that she has "some problems with consistent attendance" more than accounts for the evidence she has presented. This finding not only tracks the views of Dr. Blackmer that plaintiff has some limitation or is "somewhat" limited, it also reflects the great bulk of and is supported by substantial evidence in the record as a whole.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the

---

[6]Dr. Entin refers and gives great weight to, and then purportedly adopts the opinions of an examining source received in the course of the prior claim. (R. 221-225, 328.) Even so, the examining psychologist found only "mild" effects and limitations on plaintiff's ability to perform gainful work. (R. 224.) In this context, "some" and 'mild" could be viewed as equivalent.

Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: [signature]
U.S. Magistrate Judge

9/3/08
Date



Case 4:07-cv-00041-JLK-BWC Document 21 Filed 09/03/08 Page 8 of 8 Pageid#: 84